ROSA PRIMOSCHITZ, as Administratrix, etc., of FRED PRIMOSCHITZ, Deceased, Respondent, v. HARRIS STRUCTURAL STEEL Co., INC., Appellant.

First Department, May 29, 1936.

*James G. Purdy* of counsel [*Arthur K. Wing* with him on the brief; *Wing & Wing*, attorneys], for the appellant.

*George I. Swetlow* of counsel [*Sidney M. Lindner* with him on the brief; *Lesser & Ippolito*, attorneys], for the respondent.

DORE, J.  This is an action by Rosa Primoschitz, as administratrix of the goods, chattels and credits of Fred Primoschitz, deceased, against Harris Structural Steel Co., Inc., for alleged wrongful death.  The jury returned a verdict for plaintiff, and from the judgment entered thereon defendant appeals.

Prior to May 22, 1930, defendant was engaged in the erection of certain steel work on a building in course of construction at the corner of Eleventh avenue and Fifty-first street, Manhattan. On May 22, 1930, deceased, who was an employee of White Construction Company, the general contractor, was upon the premises, and at about three-thirty P. M. on that day, while defend-

ant was dismantling a derrick used in the steel work, the structure collapsed and injured deceased. It is claimed that his sudden death on July 2, 1930, about six weeks thereafter, was due to the injuries received in that accident.

The trial court submitted to the jury the following issues: (1) Were the injuries received by plaintiff's intestate on May 22, 1930, due to the negligence of the defendant? (2) Was deceased's death on July 2, 1930, due to the injuries received by him in that accident? (3) Was the settlement and general release made by plaintiff's intestate on May 31, 1930, with the defendant for the sum of seventy-five dollars, void or voidable, either on the ground of fraud or on the ground of a mutual mistake of fact?

In respect to liability, defendant contends that the collapse of the structure was not due to its negligence, but to inherent defects in the structure. We hold that the conclusion of the jury that the accident was caused by the defendant's negligence, and without any negligence on the part of the deceased, was supported by the evidence and on that ground alone cannot be disturbed.

An important question presented is whether, upon this record, the plaintiff has established that the death of the deceased on July 2, 1930, was due to the injuries received by him in the accident. Dr. Judson C. Fisher, employed as physician by White Construction Company, the employer of deceased, testified for the defendant. Dr. Fisher saw and examined Primoschitz at his office on May 23, 1930, the day after the accident; also, on the twenty-seventh, twenty-ninth and thirty-first of May, and on June fourth. He found the patient suffering from contusions on the lower leg above the ankle; abrasions on the left thigh; contusions and abrasions on the middle of the right thigh. There was present an old scar of an old wound in the middle of the shin. On May twenty-seventh Primoschitz complained of pain in his left ankle and lower leg, and an X-ray was taken which proved negative. No large blood vessels appeared to be injured. On May twenty-ninth the abrasions were healed and the dressings removed. This doctor further testified that the deceased never made any complaints to him about pains or discomfort in his chest. On June eleventh Primoschitz returned to his work and worked for three days, when he was laid off temporarily, but resumed work on June twenty-sixth and worked each day thereafter to and including July 2, 1930, the day he died.

On the afternoon of July 2, 1930, Dr. Harry Schwartz, answering an ambulance call from the Hospital for Ruptured and Crippled, picked up an unknown man at 66 West Forty-sixth street, who was later identified as the deceased. The hospital received the

call at five twenty-seven P. M.; Dr. Schwartz left at five-thirty P. M., and it took about five or six minutes to reach the place. Primoschitz was, at that time, unconscious and lying on the sidewalk in front of a store. It was a warm July day, and it was Dr. Schwartz's first impression that Primoschitz suffered from a sunstroke, and he so told a police officer. In his report, however, Dr. Schwartz made a diagnosis of myocarditis. Primoschitz was not taken to the Hospital for Ruptured and Crippled, but to Bellevue, and he was not dead when the ambulance reached that hospital.

The ambulance arrived at Bellevue at six o'clock, and the hospital report showed that at six-five the patient was dead. The death certificate, which was made after an autopsy had on the morning of July 3, 1930, by Dr. Gonzales, deputy chief medical examiner, and Dr. Weinberg, assistant medical examiner, gave the cause of death as follows: " Chronic myocarditis; arteriosclerosis; general visceral congestion; pending chemical analysis."

The widow and several of the friends and acquaintances of the deceased gave testimony to the effect that prior to the accident deceased was sturdily built, had a ruddy face, and at all times apparently enjoyed good health. About two and one-half months prior to the accident the deceased passed an examination and secured a life insurance policy in the amount of $1,000 from the Metropolitan Life Insurance Company, and was then found to be in good physical health. His widow and several of his fellow-workers testified that immediately after the accident, deceased was pale; his voice was low; he had shortness of breath on slight exertion; suffered pains in the chest; coughed blood; perspired heavily; had bloodshot eyes; became easily excited, and manifested other symptoms of a myocardiac condition.

The only medical testimony offered by plaintiff to connect the death with the accident was the testimony of Dr. Louria. Plaintiff's counsel addressed a lengthy hypothetical question to this doctor, which was amended in various ways, and resulted in the following question: " Q. Can you state with reasonable certainty whether or not the accident he sustained on May 22, 1930, was, with reasonable certainty, a competent producing cause of his death on July 2, 1930? " The answer was, " Yes." In other words, Dr. Louria simply said he could state whether or not the accident was a competent producing cause of his death, but Dr. Louria was never asked and did not state whether the death was, in fact, caused by the accident. The next question asked of Dr. Louria was: " Q. What was the cause of his death? A. Myocarditis." An examination of the record fails to disclose any medical testimony that the myocarditis which Dr. Louria said

was the cause of death was in turn caused by this accident. Dr. Fisher, a witness for defendant, testified that myocarditis may result in an acute dilation of the heart and that the symptoms ascribed to Mr. Primoschitz could arise only from a long-standing chronic condition. On this record we consider that plaintiff failed, by adequate testimony to establish a causal connection between the death and the accident as the competent producing cause of the death. This in itself would require reversal, but there was also error in the court's charge in connection with the issues submitted to the jury in respect to the general release.

The release in question was concededly signed by Mr. Primoschitz on May 31, 1930, on payment of the sum of seventy-five dollars as and for full settlement of all claims. At the trial no evidence of fraud on defendant's part was adduced, yet the trial court, in its charge to the jury, over the objection and exception of defendant, expressly submitted to the jury the issue of fraud. Counsel for defendant made the following request to charge: " That there is no evidence in this case whatever from which they [the jury] can find any fraud, misrepresentation or duress practiced by the defendant upon the deceased in taking this release." The court charged that there was no positive evidence of fraud. " But it is for the jury to say whether if one side or the other knew of a fact which it didn't communicate to the other side, whether that would constitute fraud." The charge should have been made as requested, and the failure to do so and the additional erroneous charge made present prejudicial reversible error, especially when considered in relation to the evidence offered by plaintiff in support of the contention that the release was executed under a mutual mistake of fact in respect to the real injuries sustained by deceased.

From all of the above it follows that the judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide event.

Martin, P. J., McAvoy, Townley and Cohn, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.